UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JEMEL RASHAUNE JACKSON,

        Plaintiff,

        Case No. 1:25-cv-160

v.

        Honorable Robert J. Jonker

MICHAEL BURGESS et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order.

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104–134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I.     **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The events about which he complains occurred at that facility.

Plaintiff sues Warden Michael Burgess, Nurse Lydia Pant, Unknown Party #1 named as the Food Service Director/Supervisor, Unknown Party #2 named as the Health Care Provider/Physician Assistant, and Unknown Party #3 named as the Chaplain. Plaintiff sues Defendant Burgess in his official and personal capacity, Defendants Pant and Unknown Party #3 in their respective personal capacities, and Defendants Unknown Party #1 and Unknown Party #2 in their respective official capacities. (Compl., ECF No. 1, PageID.2.)

Plaintiff alleges that on July 12, 2024, Defendant Pant disclosed Plaintiff's "medical condition" in housing unit 5 without Plaintiff's consent or approval. (*Id.*, PageID.3, ¶ 2.)

Plaintiff next alleges that Defendant Unknown Party #1 (Physician Assistant) "refused [Plaintiff] medical treatment while in general population [and in] segregation by not see[ing] to [Plaintiff's] disabilities pertaining to his chronic care and vision impairment."[1] (*Id.* ¶ 3.) Plaintiff explains that he is legally blind due to glaucoma and cataracts. (*Id.*) Plaintiff notes that no medical appointments have been scheduled. (*Id.*)

Additionally, Plaintiff alleges that Unknown Party #2 (Food Service Director/Supervisor) "has been feeding ECF inmates off of heat sensitive trays which the plastic has peeled off of the food trays an[d] been 'mixed with the food' and served to the inmate[s] at every feeding time."

---

[1] The Court corrects certain spelling and punctuation errors in quotations from Plaintiff's complaint.

2

(*Id*. ¶ 4.) Plaintiff reports that inmates are forced to "eat the tray or don't eat at all." (*Id*.) Plaintiff notes that, additionally, "segregation inmate[s] are not allowed drinking utensils: [a]t the lunch mealtime no cups only drink mix [and] no way to consume the beverage." (*Id*.) Plaintiff also complains that ECF inmates are being served "low grade meat and beverages and rotten fruit." (*Id*.) Plaintiff contends that this will destroy the inmates' digestive systems. (*Id*.) He also notes that Defendant Unknown Party #2 purchases the low-grade items so that a yearly bonus will be given to food service for funds saved. (*Id*.)

Further, Plaintiff alleges that Unknown Party #3 (ECF Chaplain) refused to let Plaintiff participate in Ramadan on February 1, 2025, "due to the fact [Plaintiff] was housed in the seg[regation] unit pending transfer." (*Id*. ¶ 5.) Plaintiff states that he is a Moorish American and has participated in every Ramadan. (*Id*.)

Finally, Plaintiff contends that Defendant Warden Michael Burgess "fail[ed] to do his job by refusing to correct his 'staff and administration' after multiple complaints from MDOC inmates, poor health care, poor food service, racial and religious discrimination toward general population inmates and segregation inmates, which has resulted into cruel and unusual punishment." (*Id*. ¶ 1.)

Plaintiff seeks monetary damages. (*Id*., PageID.4.)

II.     **Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that

3

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III.    Discussion

####    A.    No Standing to Assert Rights of Other Prisoners

At times, the complaint appears to assert claims on behalf of other prisoners. For example, the complaint describes Defendant Burgess's alleged inaction in the face of "multiple complaints from MDOC inmates," as well as his alleged "discrimination toward general population and segregation inmates." (*See* Compl., PageID.3, ¶ 1.) The complaint also asserts other harms by the unnamed Defendant ECF Food Service Director/Supervisor against "ECF inmates." (*See id.*, ¶ 4.) To the extent Plaintiff is attempting to assert claims regarding the rights of other prisoners, he lacks standing to do so. *Newsom v Norris*, 888 F.2d 371, 381 (6th Cir. 1989) (citing *McGowan v. Maryland*, 366 U.S. 420, 429 (1961)). "As a layman, Plaintiff may only represent himself with respect to his individual claims and may not act on behalf of other prisoners." *Robinson v. Washington*, No. 1:22-cv-262, 2022 WL 1467949, at *3 (W.D. Mich. May 10, 2022) (citing, inter alia, *O'Malley v. Brierley*, 477 F.2d 785 (3d Cir. 1973)). Thus, any such claims asserted by Plaintiff on behalf of other prisoners will be dismissed for failure to state a claim.

####    B.    Defendant Warden Burgess

The complaint names Warden Michael Burgess in his official and personal capacity. (*See* Compl., PageID.2) The complaint alleges Burgess "fail[ed] to do his job by refusing to correct his 'staff and administration'" regarding his complaints, lack of health care, poor food service, racial and religious discrimination, "which has resulted into cruel and unusual punishment." (*See id.*, at PageID.3, ¶ 1.) These assertions are an attempt to hold Defendant Burgess liable because of his supervisory position at ECF. However, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon

5

active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). The United States Court of Appeals for the Sixth Circuit has set forth the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995).

Here, Plaintiff fails to allege any *facts* suggesting that Defendant Burgess encouraged or condoned the conduct of his subordinates, or "authorized, approved, or knowingly acquiesced" in the alleged conduct. *Peatross*, 818 F.3d at 242. Instead, Plaintiff merely alleges Burgess "fail[ed] to do his job . . . ." (Compl., PageID.3, ¶ 1.) This is insufficient to hold Defendant Burgess liable for the alleged failures of his subordinates. *See, e.g.*, *Crawford v. Tilley*, 15 F.4th 752, 766 (6th Cir. 2021) (finding prisoner's factual allegations insufficient to state supervisory liability, where the defendant supervisor allegedly accepted the prisoner on a transfer, was generally aware of the prisoner's medical conditions, knew the prison's policies and customs posed risks to the plaintiff, and "never tried to alleviate these risks"). Plaintiff's conclusory allegations of supervisory responsibility do not support an inference that Defendant Burgess was personally involved in the alleged violations of Plaintiff's rights. *See, e.g.*, *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899;

*Summers*, 368 F.3d at 888. Thus, Plaintiff's claims against Defendant Burgess in his personal capacity will be dismissed.

Plaintiff's claims against Defendant Burgess in his official capacity fail for additional reasons. A suit against an individual in his or her official capacity is equivalent to a suit brought against the governmental entity, in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Thus, Plaintiff could not pursue a damages claim against the State of Michigan or the MDOC under § 1983, and he cannot pursue such a claim against Defendant in his official capacity. Accordingly, Plaintiff's official capacity claims against Defendant Burgess for damages under § 1983 are properly dismissed because relief cannot be granted on such a claim.

An official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex parte Young* for injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167

n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, in itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief).

Here, Plaintiff alleges harm for constitutional violations that have already occurred. He does not seek declaratory or injunctive relief, prospective or otherwise. He seeks damages. As the Sixth Circuit recently explained in *Cooperrider v. Woods*, 127 F.4th 1019 (6th Cir. 2025):

> But the *Ex parte Young* exception applies only when a plaintiff seeks and clearly alleges 'prospective' equitable relief to stop 'a continuing violation of federal law.'" *Josephson [v. Ganzel]*, 115 F.4th [771,] 782 [(6th Cir. 2024)] (quoting *Morgan v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn.*, 63 F.4th 510, 515 (6th Cir. 2023)). As a result, we "need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)).

*Cooperrider*, 127 F. 4th at 1043–44 (parallel citations omitted). Thus, the *Ex parte Young* exception is inapplicable to Plaintiff's claims against Defendant Burgess.

### C. Defendant Nurse Pant

The complaint names Nurse Lydia Pant as a Defendant in her personal capacity. (*See* Compl., ECF No. 1, PageID.2) The complaint alleges that Nurse Pant "disclosed the medical condition of [Plaintiff] on 7–12–24 in housing unit 5 without [Plaintiff's] consent or approval." (*Id.*, PageID.3, ¶ 2.) Plaintiff does not indicate what law he intends to use to support these allegations. (*See generally id.*) The Court will analyze this allegation under the Fourteenth Amendment to the U.S. Constitution as a matter of informational privacy. The Court will also construe the complaint as attempting to state a claim under the Health Insurance Portability and Accountability Act (HIPAA).

#### 1. Fourteenth Amendment

Regarding the right to privacy under the Fourteenth Amendment, the Sixth Circuit has stated:

> Two types of interests have been identified by the Supreme Court as protected by the right to privacy that is rooted in the substantive due process protections of the Fourteenth Amendment. One is the interest in "independence in making certain kinds of important decisions," *Whalen v. Roe*, 429 U.S. 589, 599–600 & n.26 (1977) (noting that these decisions have been characterized as dealing with "matters relating to procreation, marriage, contraception, family relationships, and child rearing and education." (quoting *Paul v. Davis*, 424 U.S. 693, 713 (1976)). The other type of privacy interest applicable to individuals is the "interest in avoiding disclosure of personal matters." *Id.* at 599, 603–04 (recognizing that a statute requiring that the state be provided with a copy of certain drug prescriptions implicated the individual's interest in nondisclosure, but upholding the law because the statute contained adequate security measures); *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 465 (1977) (assuming that President Nixon had a legitimate expectation of privacy in his private communications, but upholding a federal law that provided for the review and classification of presidential materials by professional archivists).

*Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008). Plaintiff's claim implicates the latter interest, i.e. the "individual's right to control the nature and extent of information released about

9

that individual," which "has been coined an informational right to privacy." *Bloch v. Ribar*, 156 F.3d 673, 683 (6th Cir. 1998).

The Sixth Circuit has concluded that "the Constitution does not encompass a general right to nondisclosure of private information." *J.P. v. DeSanti*, 653 F.2d 1080, 1087–90 (6th Cir. 1981). Consequently, the Sixth Circuit restricts the constitutional right to informational privacy to "those personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty.'" *Id.* at 1090 (citations omitted). "Only after a fundamental right is identified should the court proceed to the next step of the analysis—the balancing of the government's interest in disseminating the information against the individual's interest in keeping the information private." *Lambert*, 517 F.3d at 440.

Applying these standards, the Sixth Circuit has repeatedly rejected claims asserting a constitutional right to nondisclosure of personal information. *See, e.g.*, *Lee v. City of Columbus*, 636 F.3d 245, 261 (6th Cir. 2011) (city's requirement that employees returning from sick leave disclose the nature of their illness to their immediate supervisors does not implicate a fundamental right); *Summe v. Kenton Cnty. Clerk's Office*, 604 F.3d 257, 270–71 (6th Cir. 2010) (county's release of medical record of deputy county clerk to citizen pursuant to open records request did not implicate a right fundamental or implicit in the concept of ordered liberty so as to violate constitutional right to privacy); *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 591 (6th Cir. 2008) (school's disclosure of information to Children Services not a violation of the plaintiff's constitutional rights); *Barber v. Overton*, 496 F.3d 449, 455–57 (6th Cir. 2007) (release of guards' birth dates and social security numbers did not rise to constitutional level); *Coleman v. Martin*, 63 F. App'x 791, 793 (6th Cir. 2003) (dissemination of prisoner's mental health records to parole board was not a constitutional violation); *DeSanti*, 653 F.2d at 1091 (constitutional rights not

violated by dissemination of juvenile delinquents' social histories to various state agencies). Indeed, the Sixth Circuit has recognized an "informational-privacy interest of constitutional dimension" in only two instances: (1) where the release of personal information could lead to bodily harm, and (2) where the information released was of a "sexual, personal, and humiliating nature." *See Kallstrom v. City of Columbus*, 136 F.3d 1055, 1061–64 (6th Cir. 1998) (dissemination of undercover officers personnel file to members of violent street gang some of whom officers testified against at trial; *Bloch*, 156 F.3d at 684–86 (nonconsensual disclosure at press conference of details of the plaintiff's rape).

These cases foreclose any privacy claim against Nurse Pant under the Fourteenth Amendment for Nurse Pant's alleged disclosure of Plaintiff's unspecified medical condition, without his consent, on July 12, 2024. (*See* Compl., PageID.3, ¶ 2.) A general disclosure of health information to other prisoners and prison officials does not implicate the Fourteenth Amendment. *See, e.g. Coleman*, 63 Fed. App'x. at 793; *Reeves v. Engelsgjerd*, 2005 WL 3534906, at *4 (E.D. Mich. Dec. 23, 2005) (doctor did not violate prisoner's constitutional rights by discussing his medical condition with non-medical staff and in front of other inmates). Given that there are no allegations that the alleged disclosure led to bodily harm, as in *Kallstrom*, 136 F.3d at 1061, or was of a "sexual, personal, and humiliating nature," as in *Bloch*, 156 F.3d at 684, Plaintiff's Fourteenth Amendment claim against Nurse Pant fails. *See Twombly*, 550 U.S. at 570 (holding that a complaint must contain "enough facts to state a claim to relief that is plausible on its face."); *Iqbal*, 556 U.S. at 679 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Thus, Plaintiff has failed to state a Fourteenth Amendment claim against Nurse Pant.

11

### 2. HIPAA

Although Plaintiff does not cite HIPAA as a basis for his claim against Nurse Pant, the Court reads his *pro se* complaint indulgently, *see Haines*, 404 U.S. at 520, and analyzes these allegations under HIPAA. HIPAA establishes national standards to prevent medical professionals from disclosing patient information to anyone other than the patient and the patient's designated representatives. *See* 45 C.F.R. § 164.502. However, there is no private cause of action for a HIPAA violation. *Faber v. Ciox Health, LLC*, 944 F. 3d 593, 596 (6th Cir. 2019) ("HIPAA doesn't authorize a private cause of action.").

Plaintiff, therefore, fails to state any claim against Nurse Pant under HIPAA.

### D. Official Capacity Claims Against Defendants ECF Physician Assistant and ECF Food Service Director/Supervisor

Plaintiff's third and fourth set of claims are alleged against two unnamed parties: a Physician Assistant at ECF, and the ECF Food Service Director/Supervisor; each are named in their official capacities. (*See* Compl., PageID.2). These claims include allegations that the Physician Assistant did not see to Plaintiff's chronic care and vision impairment, and that the Food Service Director has provided inadequate, unhealthy, or low-quality food and drink. (*See id.*, PageID.3, ¶¶ 3–4.) Plaintiff only seeks seeks monetary damages. (*See id.*, PageID.4.)

As explained above, a suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will* , 491 U.S. at 71; *Matthews*, 35 F.3d at 1049. The states and their departments are immune from suit in the federal courts under the Eleventh Amendment, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst*, 465 U.S. at 98–101; *Pugh*, 438 U.S. at 782; *O'Hara*, 24 F.3d at 826. Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern*, 440 U.S. at 341, and the State of Michigan has

not consented to civil rights suits in federal court. *Abick*, 803 F.2d at 877. In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013). Because Plaintiff sues these Defendants in their official capacities and seeks only monetary damages, he has failed to name a person who is liable under § 1983. Therefore, Plaintiff has failed to state a claim against Defendants Unnamed Party #1 Physician Assistant and Unnamed Party #2 Food Service Director/Supervisor upon which relief can be granted.

### E.   Defendant Unknown Party #3 ECF Chaplain

The complaint names Defendant Chaplain in his personal capacity. (*See* Compl., ECF No. 1, PageID.2) The complaint alleges that Defendant Chaplain "refused to let [Plaintiff] participate in Ramadan on February 1, 2025 due to the fact [Plaintiff] was housed in the seg[regation] unit pending transfer[; Plaintiff] is a Moorish American and has participated in every Ramadan." (Compl., ECF No. 1, PageID.3, ¶ 5.) Plaintiff's allegations implicate his rights under (1) the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc–1(a), and (2) the First Amendment's Free Exercise clause.

#### 1.   RLUIPA

RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to [a prison] . . . unless the government demonstrates that imposition of the burden on that person: (1) is in furtherance of a compelling governmental

13

interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a); *see also Haight v. Thompson*, 763 F.3d 554, 559–60 (6th Cir. 2014). RLUIPA does not create a cause of action against an individual in that individual's personal capacity. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir. 2009), *aff'd*, *Sossamon v. Texas*, 563 U.S. 277 (2011);[2] *see also Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) ("[RLUIPA] does not create a cause of action against state employees in their personal capacity."); *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013) ("RLUIPA does not provide a cause of action against state officials in their individual capacities . . . .").[3]

Moreover, RLUIPA does not permit damages claims against prison officials in their official capacities. *See Sossamon v. Texas*, 563 U.S. 277, 285–86 (2011) (holding that RLUIPA did not abrogate sovereign immunity under the Eleventh Amendment); *see also Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) ("[T]he Eleventh Amendment bars plaintiff's claim for monetary relief under RLUIPA."). Here, Plaintiff only seeks monetary relief against Defendant Chaplain, and this Defendant is named in his personal capacity only. (Compl. at PageID.4.) Thus, Plaintiff cannot proceed against Defendant Chaplain under RLUIPA for money damages. *Sossamon*, 563 U.S. 277; *Cardinal*, 564 F.3d at 801.

---

[2] The United States Supreme Court granted certiorari only on the question of "[w]hether an individual may sue a State or state official in his official capacity for damages for violation of" RLUIPA. *Sossamon v. Texas*, 560 U.S. 923 (2010). Thus, the Supreme Court left undisturbed and unreviewed the Fifth Circuit's holding that "RLUIPA does not create a cause of action against defendants in their individual capacities." *Sossamon*, 560 F.3d at 331.

[3] In *Haight v. Thompson*, 763 F.3d 554 (6th Cir. 2014), the Sixth Circuit analyzed whether Congress's spending power permitted a RLUIPA damages claim against an individual prison official in the official's personal capacity. The court rested its determination that such claims were not permitted on its conclusion that "appropriate relief" under RLUIPA was not a sufficiently clear statement to authorize such a damages claim. *Id*. at 567–69. The Sixth Circuit stopped short of adopting the reasoning that swayed the Fifth Circuit in *Sossamon* and subsequent federal circuit court panels. *Haight*, however, did not squarely present the issue whether a personal capacity suit for injunctive or declaratory relief might be available.

14

Moreover, a plaintiff cannot use § 1983 to get damages that RLUIPA does not provide. Section 1983 authorizes suit for the deprivation of "any rights . . . secured by the Constitution ***and laws***" of the United States. 42 U.S.C. § 1983 (emphasis added). RLUIPA is plainly a law of the United States; thus, § 1983 might offer another means of suing for damages for an RLUIPA violation. In *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455 (6th Cir. 2019), the Sixth Circuit Court of Appeals considered that possibility:

> To determine whether § 1983 allows someone to enforce a federal statute, we determine whether Congress intended to create an "individually enforceable right" and whether Congress wanted the statute to provide the exclusive remedy. *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 120–21 (2005).
>
> RLUIPA creates an individually enforceable right. *Cf. Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002) (acknowledging that "rights-creating" individually focused language akin to that found in Titles VI and IX demonstrates congressional intent to create a right enforceable by individuals). But where, as with RLUIPA, Congress provides an "express" cause of action under the statute, it ordinarily indicates that plaintiffs cannot access "a more expansive remedy under § 1983." *City of Rancho Palos Verdes*, 544 U.S. at 121; *see Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 256 (2009). Put another way, the reality that RLUIPA doesn't allow for damages indicates that Congress didn't intend § 1983 to provide a backdoor to achieving a different result. *See Fitzgerald*, 555 U.S. at 256; *City of Rancho Palos Verdes*, 544 U.S. at 121.

Cavin, 927 F.3d at 460 (parallel citations omitted). For this reason, as well, the complaint fails to state a claim for violation of RLUIPA upon which relief can be granted against Defendant Chaplain.

### 2.  **First Amendment Free Exercise**

The Free Exercise Clause of the First Amendment to the United States Constitution provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const. amend. I; *see also Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940) (holding that the Fourteenth Amendment incorporates the First Amendment's protections against states). "The irreducible core of the first amendment guarantee of the right of free exercise of religious beliefs

is the right to practice privately any religion." *Walker v. Mintzes,* 771 F.2d 920, 930 (6th Cir. 1985).

It is well established that prisoners do not lose their First Amendment rights by virtue of their incarceration. *See Cruz v. Beto,* 405 U.S. 319, 322 n.2 (1972). Convicted prisoners retain all First Amendment rights not inconsistent with their status as prisoners. *See Burton v. Nault,* 902 F.2d 4, 5 (6th Cir. 1990); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (noting that while "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion"). However, the rights are not absolute and may be subjected to reasonable restrictions and limitations as necessitated by the circumstances of prison life. *See Abdur-Rahman v. Michigan Dept. of Corr.*, 65 F.3d 489, 491 (6th Cir. 1995) (citing *Bell v. Wolfish*, 441 U.S. 520, 549–51 (1979)). Thus, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

To establish that this right has been violated, the plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) the defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987). Plaintiff contends that Defendant Chaplain infringed upon Plaintiff's practice of observing Ramadan by not permitting Plaintiff to "participate in Ramadan on February 1, 2025." (Compl., ECF No. 1, PageID.3, ¶ 5.) At this stage of the proceedings, the Court accepts as true Plaintiff's allegations regarding his sincerely held religious beliefs, and there is little doubt that observing Ramadan is a common religious practice. The next consideration is "whether the challenged practice of the prison officials infringes on the religious

16

belief." *Kent*, 821 F.2d at 1224–25. A practice will not be considered to infringe on a prisoner's free exercise unless it "places[s] a substantial burden on the observation of a central religious belief or practice." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989).

"[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. Of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). "[T]he Government substantially burdens an exercise of religion when it 'place[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs . . . or effectively bar[s] his sincere faith-based conduct.'" *New Doe Child #1 v. Cong. of the U.S.*, 891 F.3d 578, 589 (6th cir. 2018) (quoting *Haight v. Thompson*, 763 F.3d 554, 565 (6th Cir. 2014)). It "is a is a difficult threshold to cross." *Living Water Church of God*, 258 F. App'x at 736. "[A] 'substantial burden' must place more than an inconvenience on religious exercise." *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)). A particular government action will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult . . . ." *Id*. Plaintiff's allegations regarding the burden Defendant Chaplain imposed on Plaintiff's religious practices—forbidding Plaintiff's participation in Ramadan—permits an inference that the burden could be substantial in that it would effectively bar Plaintiff's sincere faith-based conduct.

However, on February 1, 2025, and at the time Plaintiff filed his complaint on February 10, 2025, it was weeks before Ramadan would be observed.[4] Ramadan began on Friday, February

---

[4] The time for observing Ramadan is based upon the Islamic lunar calendar. *See, e.g.*, Yassmin Abdel-Magied, *How Do We Know When Ramadan Starts and Ends? It's Up to the Moon*, National Geographic, Apr. 5, 2024, https://www.nationalgeographic.com/history/article/ramadan-sighting-of-the-moon (last visited Mar. 25, 2025). Because the lunar year is shorter than the Gregorian solar year, it is possible that Ramadan might be observed twice within the same solar year. *Id*. For example, in 2030, Ramadan is expected to start early in January and then again at the end of December. Al Jazeera, Ramadan 2024: Fasting Hours and Iftar Times Around the World, Mar. 7,

17

28, 2025, and will end on the evening of Sunday, March 30, 2025. *See e.g.*, https://islamic-relief.org/ramadan/ramadan-timetable-2025-islamic-relief-worldwide/ (last visited Mar. 25, 2025). Thus, any impact Defendant Chaplain's actions may have had on Plaintiff's observance of Ramadan could only have been anticipatory.

Plaintiff seeks only damages for Defendant Chaplain's future infringement, not injunctive or declaratory relief. At the time Plaintiff filed his complaint, however, his religious practice had not been infringed nor had it been burdened at all. Therefore, the Court concludes that Plaintiff has failed to identify a substantial burden on his religious practice and, thus, fails to state a claim for violation of his First Amendment free exercise rights.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed without prejudice for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reason the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the full $605.00 appellate filing fee pursuant to § 1915(b)(1). *See McGore*, 114 F.3d at 610–11. If Plaintiff is barred from proceeding *in forma*

---

2024, https://www.aljazeera.com/news/2024/3/7/ramadan-2024-fasting-hours-and-iftar-times-around-the-world (last visited Mar. 25, 2025).

*pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g), he will be required to pay the full appellate filing fee in one lump sum.

      This is a dismissal as described by 28 U.S.C. § 1915(g).

      A judgment consistent with this opinion will be entered.


Dated:  April 7, 2025                /s/ Robert J. Jonker
                                                    Robert J. Jonker
                                                    United States District Judge